## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PONG GAME STUDIOS
CORPORATION,
d/b/a PONG MARKETING

        Plaintiff

        v.

MIELE MANUFACTURING, INC.,
d/b/a MIELE AMUSEMENTS

        Defendant

No. 4:18-cv-00975-MWB

## AMENDED COMPLAINT

Plaintiff Pong Game Studios Corporation, d/b/a Pong Marketing, by and through its attorneys, Fox Rothschild LLP, submits this Amended Complaint against Miele Manufacturing, Inc., d/b/a Miele Amusements and states as follows:

## PARTIES

1. Plaintiff Pong Game Studios Corporation, d/b/a Pong Marketing ("Pong") is a corporation organized under the laws of the Province of Ontario (Canada) with its principal place of business at 201 Creditview Road, Woodbridge, Ontario L4L 9T1, Canada.

2. Pong is in the business of selling legally available gaming equipment throughout the Commonwealth of Pennsylvania, including to bars, taverns, and other establishments, including but not limited to restaurants, stores, and gas stations.

3.     Defendant Miele Manufacturing, Inc., d/b/a Miele Amusements ("Miele") is a Pennsylvania corporation with its principal place of business at 535 East Third Street, Williamsport, Pennsylvania 17701.

4.     Upon information and belief, Miele is in the business of selling gaming equipment in Pennsylvania, in competition with Pong.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship and the amount in controversy exceeds $75,000.

6.     Venue is proper in the Middle District of Pennsylvania under 28 U.S.C. § 1391(b)(1) because Miele resides in this judicial district.  Venue is alternatively proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this action occurred in this judicial district.

## FACTS

7.     On April 26, 2018, Pong first learned that Miele had sent a letter dated April 26, 2017 (the "Miele Letter") to various Miele customers throughout Pennsylvania.  A true and correct copy of the Miele Letter is attached as Exhibit "A."

8.     The Miele Letter represents that "some Pennsylvania and out-of-state operators are promoting skill games that are not legal in the state of PA" and that

2

"[s]ome of these machines have recently been picked up in the Williamsport, Pittsburgh, and Harrisburg areas." *See* Exhibit "A."

9. Included among these "operators" was Pong, as the Miele Letter attached a color screenshot of a skill game under the heading "Pong Marketing." *See id.*

10. The attachment to the Miele Letter represented that the listed games, including Pong's, had been "found to be illegal and [were] currently being seized by the Pennsylvania [Bureau of Liquor Control Enforcement]." *Id.*

11. The Miele Letter defamed Pong and intentionally interferes with Pong's existing and prospective business relations with its customers.

12. In particular, the Miele Letter suggested that Miele, but not Pong, was able to "bring a legal game to you that will not jeopardize your liquor license." *See id.*

13. The Miele Letter also referred to "40,000 illegal skill, poker, and cherry machines, often referred to as 'gray area', currently in the market," suggesting that Miele was working to "replace" the games it claimed were illegal with Miele's own products.

14. In fact, Pong's games, which it distributes throughout the Commonwealth, are not illegal but rather are lawful games of skill.

3

15. Moreover, no court or administrative body has ever determined that any of Pong's games are illegal in any way.

16. On April 27, 2018, Pong, through counsel, sent Miele a letter demanding that it (1) cease and desist from making any further defamatory statements regarding Pong and (2) send a retraction to every company or person who received the Miele Letter or any similar communication.

17. Pong requested written confirmation from Miele within seven days that it had (1) ceased and desisted from making further defamatory statements and (2) sent the requested retraction.

18. To date, Miele has not responded to Pong's demand.

19. To date, upon information and belief, Miele has not ceased and desisted from making further defamatory statements about Pong or sent any retractions.

20. For example, as recently as November 2018, Miele hired retired Bureau of Liquor Control Enforcement ("BLCE") officers and sent them into bars, taverns, and other establishments purporting to be "Compliance Officers."

21. These purported "Compliance Officers" have informed the persons in charge of such establishments that Pong's games are illegal and that they would be confiscated, despite the falsity of such statements.

22. The establishments Miele has targeted in connection with its conduct set forth above include but are not limited to: the Marche Club in Bradford,

4

Pennsylvania; Paolo's Pizza in Reading, Pennsylvania; D & D Market & Deli in Catasauqua, Pennsylvania; Emmaus Avenue Market in Allentown, Pennsylvania; and a Sunoco gas station in Allentown, Pennsylvania.

23. These locations, among others, declined to accept Pong's products and/or removed Pong's products as a direct result of Miele's conduct.

24. In addition, in at least one instance, a Pong customer has contacted other locations advising them (falsely), based on Miele's representations, that Pong's games were illegal—as a result of which additional locations have declined to accept Pong's products and/or removed Pong's products.

25. Miele's conduct is ongoing. As a result of Miele's actions, Pong has suffered and will continue to suffer significant damages to its business reputation and its existing and prospective business relations, which to date amount to approximately $100,000 (exclusive of attorneys' fees and court costs).

## COUNT I
### Defamation *Per Se*

26. Pong incorporates the foregoing paragraphs as if fully set forth herein.

27. The factual statements published by Miele were designed to apply and did in fact apply to Pong.

28. The statements made by Miele were defamatory *per se* because they ascribed to Pong conduct or character affecting Pong's fitness for the proper conduct of its trade.

29.    The statements made by Miele were defamatory *per se* because they imputed to Pong improper or illegal business actions, impugned Pong's integrity, and/or blackened Pong's business reputation.

30.    Miele's statements were designed to be and were in fact understood by their recipients to have a defamatory meaning with respect to Pong.

31.    Miele's statements were understood by the their recipients to apply to Pong.

32.    Miele's defamatory statements were false.

33.    Pong has suffered, and will continue to suffer, damages as a result of the defamatory statements, including lost business opportunities and damage to its reputation.

34.    Any potential qualified or conditional privilege to make the defamatory statements set forth above was exceeded and abused.

35.    Miele's defamatory statements were made for a purpose that no privilege can justify.

36.    Miele's defamatory statements were made maliciously, without just cause or reason.

37.    Miele's defamatory statements were unnecessary to accomplish any privileged purpose.

38.     Miele's malicious and defamatory statements were reckless, outrageous, and made without just cause or reason, entitling Pong to an award of punitive damages.

**WHEREFORE**, Pong respectfully requests that the Court enter judgment in its favor and against Miele in an amount in excess of $75,000.00, plus costs, interest, punitive damages, attorneys' fees, and such other relief as the Court deems just and proper.

## COUNT II
### Tortious Interference with Existing and Prospective Business Relations

39.     Pong incorporates the foregoing paragraphs as if fully set forth herein.

40.     As set forth above, Miele has interfered and continues to interfere with Pong's existing and prospective contractual relationships with Pong customers.

41.     Miele has no valid basis to interfere with Pong's existing and prospective relationships with its customers, nor is Miele's conduct privileged or justified.

42.     Upon information and belief, Miele's interference with Pong's existing and prospective relationships with its customers was and is intentional.

43.     Upon information and belief, Miele's actions in interfering with Pong's existing and prospective contractual relationships with its customers was and is undertaken with the knowledge, intent, and/or purpose of gaining economic advantage for itself and to harm Pong.

7

44.    Upon information and belief, Miele's actions in interfering with Pong's existing and prospective contractual relationships with its existing and prospective customers was and is undertaken with the knowledge, intent, and/or purpose of inducing or otherwise causing Pong's customers not to perform or enter into contracts with Pong.

45.    As set forth above, Pong has been harmed by Miele's wrongful interference and has suffered monetary damages therefrom, and will suffer additional, substantial harm arising from Miele's wrongful conduct or future wrongful conduct.

46.    Miele's conduct was willful, wanton, malicious, and outrageous, thereby entitling Pong to an award of punitive damages.

**WHEREFORE**, Pong respectfully requests that the Court enter judgment in its favor and against Miele in an amount in excess of $75,000.00, plus costs, interest, punitive damages, attorneys' fees, and such other relief as the Court deems just and proper.

## **JURY DEMAND**

Pong demands a trial by jury.

Date: December 26, 2018                    FOX ROTHSCHILD LLP


By: */s/Joshua Horn*
        Joshua Horn, Esquire
        Thaddeus S. Kirk, Esquire (*pro hac vice*)
        2000 Market Street, 20th Floor
        Philadelphia, PA 19103-3222
        Telephone:  (215) 299-2000

        Attorneys for Plaintiff

## <u>CERTIFICATE OF SERVICE</u>

I certify that the foregoing Amended Complaint was served on this date via electronic filing upon all counsel of record.

Date:  December 26, 2018      */s/Joshua Horn*

                                          Joshua Horn, Esquire